IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON  DIVISION

GLEN A. AMBROSE                                                    PLAINTIFF


        v.                         CASE NO.        12-3014


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                  DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) and supplemental security income

("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial

review, the court must determine whether there is substantial evidence in the administrative

record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g)*.*


### I.  Procedural Background:

The Plaintiff filed an initial application for DIB on September 17, 2007 alleging an onset

date of April 21, 2007. (T. 87).  On September 19, 2007 the Plaintiff filed an application for SSI

alleging a disability date of March 1, 2007. (T. 276). On February 12, 2008 the plaintiff filed

another applications for DIB alleging an onset date of December 1, 1995 (T. 79, 101), due to

plaintiff's back problems (T. 95, 110). Plaintiff amended his onset at the hearing to January 29,

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael
J. Astrue as the defendant in this suit.

2007 which eliminated the DIB claim and the Plaintiff only proceeded on the SSI claim. (T. 304-305)  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on December 8, 2009.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 49 years of age and possessed a GED.  The Plaintiff  had past relevant work ("PRW") experience as a mechanic and construction worker  (T. 96).

On April 21, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's disorder of the back and mood disorder did not meet or equal any Appendix 1 listing.  T. 25.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work[2] with additional limitations.  T. 26.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as  helpers/production workers/laborer.  T. 30.  The Social Security Administration denied the Plaintiff's request for review on July 19, 2011 (T. 15). The SSA extended the Plaintiff's time to file an appeal to 30 days from January 11, 2012 (T. 3) and the Plaintiff filed the present case on January 26, 2012.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by

---

[2]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary when carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a). A person would not need to bend or twist and would need to stoop only occasionally to perform sedentary work. Cf. *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir.1992) (person would not need to crouch and would need to stoop only occasionally to perform substantially all sedentary and light jobs). *Ownbey v. Shalala*  5 F.3d 342, 344 (C.A.8 (Mo.),1993)

substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

Substantial evidence is less than a preponderance, but enough that a reasonable mind would find

it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining

the record to find substantial evidence in support of the ALJ's decision; we also consider

evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial

evidence in the record to support the Commissioner's decision, the court may not reverse the

decision simply because substantial evidence exists in the record to support a contrary outcome,

or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742,

747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity.  *Pearsall v.

Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).

The Act defines "physical or mental impairment" as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff

must show that his disability, not simply his impairment, has lasted for at least twelve

consecutive months.  *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation

process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if

the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

### A.  Step Two

The Plaintiff contends that the ALJ failed to find his Anti-Social Personality Disorder a severe impairment.  (ECF No. 8, p. 13)

At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-28, 1985 WL 56856 (1985).  If the claimant is not suffering a severe impairment, he is not eligible for disability insurance benefits. 20 C.F.R. § 404.1520(c).

In the instant case, the medical record is virtually void of any treatment notes, or indication that Plaintiff had sought mental health care, or had ever been referred by a physician for assessment.  It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). *Id*.; *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment).

-4-

Due to the lack of credible and relevant medical evidence regarding Plaintiff's alleged mental impairments, the Arkansas State Disability Determination Service (DDS) arranged for Plaintiff to undergo a mental diagnostic evaluation by Terry Efird, Ph. D which was performed on August 9, 2009. (Tr. 254-274).

Dr. Efird reported that Plaintiff showed symptoms of depression, and social anxiety due in part to his having been incarcerated on five occasions (Tr. 254-255). Plaintiff had no history of hospitalization due to emotional impairment, but he had some form of mental health care while in prison between 2000 and 2004, on felony charges (Tr. 255, 303). Dr. Efird diagnosed Plaintiff with depressive disorder, and antisocial personality disorder, with borderline traits (Tr. 257).

Depressive Disorder is a Mood Disorder (DSM IV, p. 345), while Antisocial Personality Disorder is a Personality Disorder (DSM IV, p. 685). They are separate diagnosis and should not be combined under the generic terminology of "mood disorder" by the ALJ. It is clear, however, that the ALJ considered the Plaintiff' Antisocial Personality Disorder diagnosis during his Step Three and Step Four analysis. T. 25-26.

It would have been preferable for the ALJ to have addressed the Plaintiff's Depression and Antisocial Personality Disorder separately as severe and not combined them under the generic term of "mood disorder". However, under the circumstances, his omission, if error, was harmless because he effectively considered the impairments at Step Three and Step Four. *See Arkansas v. Oklahoma*, 503 U.S. 91, 109 n. 13 (1992) (immaterial flaw by ALJ will not justify remand); *Hensley v.. Barnhart*, 352 F.3d 352, 357 (8th Cir.2003) (ALJ's incorrect determination of claimant's literacy harmless error where result was same when correct Medical–Vocational

Guidelines rule was applied); *Hall v. Bowen*, 857 F.2d 1210, 1212 & n. 2 (8th Cir.1988)(same result even if ALJ understood the Listing). *Barnes v. Astrue* 2012 WL 2045971, 4 (E.D.Ark.) (E.D.Ark.,2012).

## B.  Step Three

The Plaintiff contends that the ALJ committed error by failing to find that his Organic Mental Disorder met the listing requirements for disability or that his total limitations qualified as a functional/medical equivalent" (ECF No. 8, p. 16).

The determination of whether a claimant meets or equals an impairment described in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, is made at step three of the disability determination process. 20 C.F.R. § 416.920(a)(4)(iii). During this step, the ALJ has the responsibility to decide whether "medical equivalence" has been established. Id. § 416.926(e). An impairment is medically equivalent under the regulations if it is "at least equal in severity and duration to the criteria of any listed impairment." Id. § 416.926(a). If the ALJ finds that a claimant has an impairment that meets or equals one of the listings, then the claimant will be found disabled. Id. § 416.920(a)(4)(iii). *Carlson v. Astrue* 604 F.3d 589, 592 (C.A.8 (Iowa),2010).

On March 3, 2007 the Plaintiff visited North Arkansas Regional Medical Center (NARMC) for and injury to his low back.  At the time of admission, under Past Medical, it was noted that the Plaintiff had "no emotional, spiritual, or cognitive needs noted". (T. 202).  On his Disability Report, dated December 19, 2008 the Plaintiff only list back problems as a bases for his disability. (T. 95).  On subsequent Disability Reports the Plaintiff never asserts any disability for mental problems. (T. 104).  The fact that the plaintiff did not allege the impairment as a basis

for her disability in her application for disability benefits is significant, even if the evidence of the impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

On November 7, 2007, two months after the Plaintiff had applied for benefits, the Plaintiff was referred to Dr. Van Smith for a "Neuropsychological Evaluation". (T. 214). The court has had many occasions to review reports by Dr. Smith and his opening paragraph is always the same which states in part: "Clinical history, as obtained from the patient, is considered reliable. Medical records are being requested for review. The patient is referred, by his attorney," for an evaluation.

As the court has stated many times, there was no explanation as to why Dr. Smith was not given the Plaintiff's medical records by his attorney. Nor has there every been presented to the court any revision by Dr. Smith's opinion "after" he has received medical records.

Dr. Smith stated that the Patient's medical history is significant for inter alia "degenerative joint disease, degenerative disc disease associated with the above referenced lumbar-sacral injury...closed head trauma (assault) which resulted in a Grade III concussion.[3]" As a result of Dr. Smith Evaluation he rendered a Mental Residual Functional Capacity Questionnaire (T. 209) which found the Plaintiff to be seriously limited in many areas of his ability to do work. (T. 211-212).

There is absolutely no medical evidence of any closed head trauma or concussion, nor does the medical evidence support degenerative joint disease, or any degenerative disease

---

[3]Grade III concussions involve posttraumatic amnesia for more than 24 hours or unconsciousness for more than five minutes. See  http://www.aans.org/Patient %20Information/Conditions% 20and%20Treatments/ Sports-Related% 20Head%20Injury.aspx.

associated with the Plaintiff's alleged injury in January 2007. Dr. Smith's opinion is completely

devoid of any medical basis.  The Eight Circuit has repeatedly held that visiting doctors in order

to receive benefits does not support a finding of disability. *Shannon v. Chater*, 54 F.3d 484, 486

(8th Cir. 1995) (holding that the plaintiff's encounters with doctors appeared to be linked

primarily to quest to obtain benefits, rather than to obtain medical treatment).

On October 24, 2007 the Plaintiff visited a clinic for back pain where the "onset was

yesterday" as a result of raking leaves.  His mood and affect were noted as normal. (T. 263).

Three x-rays of the lumbar spine showed "vertobral  body heights and disc spaces that are well

maintained.  There is no fracture, subluxation, or malalignment.  The tracsverse processes are

intact.  The soft tissues are unremarkable. (T. 266).  Basically the x-rays were normal.

A Psychiatric Review Technique appointment was scheduled for the Plaintiff to see Dan

Donahue on February 27, 2008 (T. 240).  Mr. Donahue's consultive notes reflect that "claimant

was requested to go to a mental status examination, IQ test, and Wechsler memory scale

evaluation by a psychologist with experience in neuropsychology, however, claimant declined to

go to these evaluations and requested that a decision be made on the available evidence."  Mr.

Donahue stated that "there is insufficient medical evidence" to adjudicate the claim. (T. 252).

The Plaintiff subsequently, however, was seen by  Terry Efird, Ph.D. on August 16, 2009 for a

consultive examination.  Dr. Efird diagnosed the Plaintiff with Depressive Disorder, NOS and

Antisocial Personality Disorder, with borderline traits. (T. 257).  He found the Plaintiff to have

Mild to Moderate Limitations in all areas except the Ability to Make Judgments on complex

work-related decisions, which he found to be Marked. (T. 259).  Mr. Efird also noted that he

"found it somewhat interesting that this claimant never mentioned anything about cognitive

-8-

difficulties or to have had that type of evaluation". (T 257).  Dr. Efird found that the Plaintiff had

"the capacity to perform basic cognitive tasks required for basic work like activities". (T. 258).

The court finds that the ALJ properly disregarded the diagnosis of Dr. Smith.

**A.  Credibility**

The Plaintiff contends that the ALJ erred in finding discounting the Plaintiff's credibility.

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' "

*Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d

1211, 1217 (8th Cir.2002)).

The Plaintiff testified that he could not cook and need help getting out of bed and that

sometimes he could not put his feet on the floor.  He stated that he had to have help bathing and

could no longer drive. (T. 293).  He also testified that he did not like to be around people because

of his sever pain. (T. 296). He stated that he had pain every day which was a 5-7 on a scale of 10.

(T. 297).

The ALJ found that the Plaintiff's medically determinable disorder of the back and mood

disorder could reasonably be expected to cause the alleged symptoms, however, the Plaintiff's

statements concerning the intensity, persistence and limiting effects of these symptoms were not

credible to the extent they are inconsistent with his RFC (T. 27).

The ALJ must consider several factors when evaluating a claimant's subjective

complaints of pain, including claimant's prior work record, observations by third parties, and

observations of treating and examining physicians relating to 1) the claimant's daily activities; 2)

the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage,

effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at

695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (*citing Polaski,* 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

### 1. Prior Work History

The Plaintiff's prior work record shows that he obtained substantial wages only one year between 1976 and 2007 and the year of 2007, the year he claimed he became disabled because of a back injury, he earned $6,260.26 which was his 5th highest earning during that 30 year span. (T. 75). *See Wildman v. Astrue,* 596 F.3d 959, 968-69 (8th Cir. 2010) (ALJ may consider a claimant's sporadic work history when determining credibility).   The court also notes that his claimed injury occurred in late January 2007 (T. 202) thus the Plaintiff had one of his best earning years after his alleged disability.

### 2. Lack of Objective Medical Evidence

With respect to Plaintiff's allege back pain, the evidence shows that Plaintiff sought medical treatment on February 3,  2007, when Plaintiff presented to the Arkansas Regional Medical Center, complaining of back pain (Tr. 202-205).  An x-ray examination of Plaintiff's lumbar spine showed that his spine was free of fracture, there was no soft tissue changes, and there was no evidence of degenerative or osteoporotic changes (Tr. 206, 273).  While the doctor's notes indicate a positive straight leg raising test (T. 203) the FABER test was negative and he was diagnosed with a Lumbar Strain/Sprain. (T. 271).  The Plaintiff went back to a local clinic on October 24, 2007  complaining of back pain (T. 263) but, again, the x-rays were completely

normal. (T. 266). The Plaintiff's Range of Motion was also noted to be normal for his extremities but limited "in the back". (T. 263). The lack of an objective medical basis to support a claimant's subjective complaints can be considered in evaluating a claimant's credibility. *Polaski*, 739 F.2d at 1322; *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir.2002).

3**. Conservative treatment:**

On February 3, 2007,  Dr. Maxwell diagnosed Plaintiff with muscle strain, advised him to remain active, avoid driving more than 30 minutes without changing positions, and to use alternating ice and heat packs for three days. The doctor further advised Plaintiff to start a regimen of back exercises, and to present for mild back massages (Tr. 205). When the Plaintiff was seen at a clinic in October 2007 he was prescribed Naproxen[4] and Flexeril[5] but not authorized a refill for either prescription. (T. 264).  *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

**4.  Medication**

The court notes that the Plaintiff did not list that he was on any pain medication on any Disability Report that was completed. (T. 98, 106, 113). It does not appear that the Plaintiff has ever been prescribed narcotic pain medication and when Plaintiff presented to St. John's ER room on December 6, 2010 he indicated that he was not on any medication. (T. 13).   A claimant's allegations of disabling pain may be discredited under the third Polaski factor by

---

[4]Naproxen is a nonsteroidal anti-inflammatory drugs (NSAIDs). It works by reducing hormones that cause inflammation and pain in the body.

[5]Flexeril (cyclobenzaprine) is a muscle relaxant.

evidence that the claimant has received minimum medical treatment and/or has taken

medications for pain only on an occasional basis. *See Cline v. Sullivan* 939 F.2d 560, 568 (C.A.8

(Iowa),1991); *citing  Williams v. Bowen*, 790 F.2d 713 (8th Cir.1986). "The ALJ may properly

consider both the claimant's willingness to submit to treatment and the type of medication

prescribed in order to determine the sincerity of the claimant's allegations of pain." *Thomas v.

Sullivan*, 928 F.2d 255, 259 (8th Cir.1991)

The Plaintiff argues that he could not see a doctor or obtain pain medication because of

his financial condition (T. 115).  A claimant's inability to afford medical services cannot be used

as a basis for a denial of benefits. *See Tang v. Apfel*, 205 F.3d 1084, 1086 (8th Cir. 2000).

However, Plaintiff has not shown that he exhausted all of the possible alternatives to receiving

treatment at a reduced rate or free of charge. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th

Cir. 1992) (noting that financial hardship must be taken into account, but there was no evidence

that the claimant sought low-cost medical treatment from her doctor, or from clinics or

hospitals).  It is also apparent that the Plaintiff sought out Emergency Room care when he

believed it was necessary.

5**. Inconsistent Statements:**

The Plaintiff testified that he could not cook and had to have assistance getting out bed

and going to the restroom. (T. 293). He stated that he cannot drive because he was afraid to and

that doctors had advised him that "if I just twist the wrong I could be paralyzed for the rest of my

life." (T. 294).  He testified that his pain level was getting worse and that he had trouble keeping

his temper after the injury. (T. 294). When the Plaintiff informed his attorney that the reason he

could not work was because of "L1-S5 herniated disks-Hepatitas C, degenerative arthritis,

osteoporsis ". (T. 138). When his attorney ask him what reasons his doctors had given him for his

pain he responded "herniated disks, osteoporosis[6], degenerative disk disease". (T. 144). The court

can find no medical record that documents the Plaintiffs's representations to has attorney or the

ALJ that any doctor diagnosed the Plaintiff with a herniated disc, degenerative arthritis, or

osteoporosis.

      The court also takes note of the varied dates that the Plaintiff has claimed arose. On his

SSI application that he filed on September 17, 2007 he listed his disability date as March 1, 2007.

On his DIB application that he filed September 19, 2007 he listed his disability date as April 21,

2007 and on his DIB application filed February 12, 2008 he listed his disability date as December

1, 1995.  When asked by the ALJ why he believed that he was disabled in December 1995 the

Plaintiff testified that was when he was diagnosed with Hepatitis C. (T. 304).  As a result of the

ALJ's questioning the attorney moved to amend the onset date to January 29, 2007.  (Id.).

      The ALJ may disbelieve subjective complaints where there are inconsistencies in the

record.  *Robinson v. Sullivan*, 956 F.2d 836 (8th Cir. 1992). This is especially true, where as

here, the ALJ sets out those inconsistencies in his opinion (Tr. 27-29). *Jernigan v. Sullivan*, 948

F.2d 1070, 1073 (8th Cir. 1991).  Assessing and resolving credibility issues is a matter that is

properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996)

(court will not substitute its own credibility opinion for that of the ALJ).

---

[6]Osteoporosis is a progressive metabolic bone disease that decreases bone density (bone mass per unit volume), with deterioration of bone structure. Skeletal weakness leads to fractures with minor or inapparent trauma, particularly in the thoracic and lumbar spine, wrist, and hip (called fragility fractures). Diagnosis is by dual-energy x-ray absorptiometry (DXA scan) or by confirmation of a fragility fracture. Prevention and treatment involve risk factor modification, Ca and vitamin D supplements, exercises to maximize bone and muscle strength and minimize the risk of falls, and drug therapy to preserve bone mass or stimulate new bone formation.  See http://www.merckmanuals.com/professional/musculoskeletal_and_connective_tissue_disorders/osteoporosis/osteoporosis.html?qt=osteoporosis&alt=sh

The court believes that the ALJ properly discounted  the credibility of the Plaintiff.

## C.  RFC

The ALJ found that the Plaintiff had the Residual Functional Capacity to perform sedentary work with additional limitations. (T. 26).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is

-14-

ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The RFC determination by the ALJ has not been questioned by the Plaintiff.  The ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010).  The court has reviewed the evidence and finds that the ALJ's RFC determination is supported by substantial evidence. [7]

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this May 8, 2013.

*/s/ J. Marschewski*

HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE

---

[7]The court notes that there is a Psyciatric Review Technique (T. 184-197) and a Mental Residual Functional Assessment (198-201) located in the record.  Neither of these documents contain any signature or information on who prepared the documents, nor do they contain a date. As a result, the documents were not considered by the court.